**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHERRY L. SIMS and MARCIA BROWN, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Civil Action No.: 21-1120 <br><br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion of the United States of America, Secretary of the Treasury, Department of the Treasury, Commissioner of Internal Revenue, and Internal Revenue Service ("Defendants") to dismiss (ECF No. 33; *see also* ECF No. 33-1 ("Br.")) the second amended complaint of plaintiffs Sherry L. Sims and Marcia Brown ("Plaintiffs").  ECF No. 24 ("SAC"). Plaintiffs opposed the motion and filed a cross motion for summary judgment.  ECF No. 36 ("Opp."); ECF No. 42.  Defendants replied on their motion to dismiss and opposed the cross motion.  ECF No. 57.  Plaintiffs then replied on their cross motion.  ECF No. 60.  Having reviewed the papers and determining that this matter can be resolved entirely on the motion to dismiss,[1] the Court will address that motion only.  The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, Defendants' motion to dismiss is granted.

I.      **BACKGROUND**

---

[1] Given the competing motions with differing standards of review, the Court directed the parties to advise the Court as to whether the motions should be addressed at the same time or in sequence. ECF No. 69.  Defendants contend that deciding their motion to dismiss first would be most efficient, as the motion for summary judgment would be mooted if the Court is inclined to grant the motion to dismiss. ECF No. 70.  Plaintiffs do not oppose proceeding with the motion to dismiss first.  ECF No. 71.

Plaintiffs bring this action to challenge the constitutionality of a limit imposed by Congress on the federal income tax deduction for state and local taxes (the "SALT Deduction"). SAC ¶ 67. These claims largely mirror those rejected by the Second Circuit in a similar constitutional challenge. *See New York v. Yellen*, 15 F.4th 569 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1669 (Apr. 18, 2022).

**A.    History of the Federal Income Tax and SALT Deduction**

Article I of the U.S. Constitution provides Congress with the power to "lay and collect Taxes, Duties, Imposts and Excises." U.S. Const. art. I, § 8, cl. 1. The federal government, however, did not enact the first federal income tax until 1861. *Yellen*, 15 F.4th at 572 (citation omitted). With this law, Congress provided that "in estimating [taxable] income, all national, state, or local taxes assessed upon the property, from which the income is derived, shall be first deducted." *State of New York v. Mnuchin*, 408 F. Supp. 3d 399, 403 (S.D.N.Y. 2019) (alteration in original) (citation omitted). This provision—the SALT Deduction—remained largely unchanged for the next decade even as Congress amended the income tax code multiple times until the income tax lapsed in 1872. *Id.* (citations omitted).

In 1894, Congress reinstated federal income taxes and with it, the SALT Deduction. *Yellen*, 15 F.4th at 573 (citation omitted). One year later, however, the Supreme Court declared that the 1894 tax law violated Article I, Section 9 of the Constitution, which provided that "no . . . direct[] Tax shall be laid, unless in Proportion to the Census," because the federal income tax was a "direct" tax that was not apportioned according to the states' relative populations. *Id.* (citing *Pollock v. Farmers' Loan & Tr. Co.*, 158 U.S. 601, 637 (1895) and U.S. Const. art. I, § 9, cl. 4).

In the wake of this decision, Congress proposed a constitutional amendment to eliminate the apportionment requirement for direct taxes, including taxes on income. *Mnuchin*, 408 F. Supp.

2

3d at 404.  The Sixteenth Amendment, ratified in 1913, provides Congress with the power to "lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States."  U.S. Const. amend. XVI.  Shortly thereafter, Congress reimplemented the federal income tax, which included the SALT Deduction.  *Yellen*. 15 F.4th at 573 (citation omitted).  From 1913 to the present, some form of the SALT Deduction "has been a mainstay of the federal Tax Code."  *Mnuchin*, 408 F. Supp. 3d at 404.

Despite its durability, Congress has repeatedly altered the SALT Deduction.  *Yellen*, 15 F.4th at 573.  In 1944, Congress introduced the standardized deduction, which meant that the SALT Deduction was relevant only to those who chose to itemize their tax deductions.  *Mnuchin*, 408 F. Supp. 3d. at 404 (citation omitted).  In 1964, Congress specifically "enumerated the types of [state and local] taxes that were deductible and disallowed a deduction for any other state and local taxes," departing from the previous rule that "all state and local taxes were deductible unless specifically disallowed."  *Id.* at 404–05 (quoting Gladriel Shobe, *Disaggregating the State and Local Tax Deduction*, 35 Va. Tax Rev. 327, 338 (2016)).  In 1986, Congress implemented an alternative minimum tax scheme which, if applicable, would preclude use of the SALT Deduction. *Yellen*, 15 F.4th at 573–74 (citation omitted).  Along with this change, Congress prevented taxpayers from deducting state and local sales taxes.  *Id.* at 574.  In 1990, Congress passed the "Pease limitation," which required taxpayers with adjusted gross incomes above certain thresholds to reduce the totals claimed in itemized deductions, including any SALT Deductions, by as much as eighty percent.  *Id.* (citation omitted).  And in 2004, Congress reinstated the deduction for sales taxes but made taxpayers choose between deducting sales or income taxes, which led to fewer taxpayers deducting state and local income taxes.  *Id.* (citation omitted).

Then, in 2017, Congress passed the Tax Cuts and Jobs Act (the "2017 Tax Act").  Pub. L. No. 115-97, 131 Stat. 2054; *see also* SAC ¶¶ 1–2.  As relevant to this matter, section 11042 of the 2017 Tax Act limited the SALT Deduction to "$10,000 ($5,000 in the case of a married individual filing a separate return)."  2017 Tax Act § 11,042, 131 Stat. at 2085–86 (codified at 26 U.S.C. § 164(b)(6)) (the "SALT Deduction Cap" or "Cap").  Plaintiffs bring this action to challenge the constitutionality of the SALT Deduction Cap.

### B.    The Complaint

In addition to describing the history of the SALT Deduction, the SAC asserts that the SALT Deduction Cap was intended to coerce high-tax states into changing their fiscal policies.  SAC ¶¶ 29, 53–54.  Plaintiffs cite statements made by various Congressmen and Executive officials suggesting that the Cap would impose a greater burden on high-tax states.  *Id.* ¶¶ 31, 39, 42. Plaintiffs further allege that the SALT Deduction Cap did harm high-tax states.  In particular, they assert that states such as Illinois, New Jersey, and New York have experienced population declines that are directly attributable to this enactment.  *Id.* ¶¶ 59–62.

Plaintiffs raise ten counts in the SAC, alleging that the SALT Deduction Cap is unconstitutional on various grounds.  The first nine counts assert violations of the (1) Tenth Amendment; (2) Privileges and Immunities Clause of Article IV; (3) Ninth Amendment; (4) Full Faith and Credit Clause of Article IV and Preamble to the Constitution; (5) "Reciprocal Immunity Doctrine"; (6) Republican Guarantee Clause of Article IV; (7) constitutional principles of federalism; and (8) and (9) Sixteenth Amendment.  *Id.* ¶¶ 71–166.  In Count Ten, Plaintiffs seek a declaratory judgment that the SALT Deduction Cap is unconstitutional and request a tax refund

for the 2018 and 2019 tax years.  *Id.* ¶ 167–70.  Defendants now move to dismiss all counts for failure to state a claim.[2]  ECF No. 33.

## II.   LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Id.*  (citation omitted).  In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III.   DISCUSSION

### A.   Tenth Amendment and Federalism Claims (Counts One and Seven)

In Count One, Plaintiffs assert that the SALT Deduction Cap violates the Tenth Amendment, SAC ¶¶ 71–96, which provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."  U.S. Const. amend. X.  In Count Seven, Plaintiffs allege that the Cap violates constitutional principles of federalism.  SAC ¶¶ 147–53.  The Court will consider these Counts in tandem, as the Supreme Court has instructed that arguments raised under the "Tenth Amendment"

---

[2] Defendants also move to dismiss Counts Four and Six as to the 2018 refund claim, but not the 2019 refund claim, for lack of jurisdiction.  Br. at 8–11.

"encompass any implied constitutional limitation on Congress' authority to regulate state activities, whether grounded in the Tenth Amendment itself or in principles of federalism derived generally from the Constitution." *See South Carolina v. Baker*, 485 U.S. 505, 511 n.5 (1988); *see also City of Phila. v. Sessions*, 280 F. Supp. 3d 579, 647 (E.D. Pa. 2017) ("[T]he Tenth Amendment embodies the principle of Federalism that pervades the Constitution. Thus, courts frequently cite to the Tenth Amendment as a placeholder for Federalism concerns.").

### i.    *Congress Has the Power to Tax Income and Define Deductions*

Where a power is delegated to Congress, the Tenth Amendment expressly disclaims the reservation of that power to the states. *New York v. United States*, 505 U.S. 144, 156 (1992).  The Constitution grants Congress the power to impose taxes, including direct income taxes.  U.S. Const. art. I, § 8, cl. 1 & amend. XVI; *see also G.M. Leasing Corp. v. United States*, 429 U.S. 338, 354 (1977) (noting that the taxation power "is a specifically enunciated power of the Federal Government").  Moreover, "Congress has unquestioned power to condition, limit, or deny deductions from gross income." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1200 (10th Cir. 2018) (citation omitted); *see also INDOPCO, Inc. v. C.I.R.*, 503 U.S. 79, 84 (1992) (recognizing that an "income tax deduction is a matter of legislative grace" (citation omitted)).  Thus, Congress acted within its delegated taxing authority when limiting the SALT Deduction.

### ii.    *Plaintiffs' Arguments in Defense of this Claim Lack Merit*

Plaintiffs' arguments that the SALT Deduction Cap violates the Tenth Amendment or principles of federalism lack merit.  First, they contend that "States' sovereign power of taxation cannot be abridged or suspended in whole or in part by the use of federal power to tax."  SAC ¶ 76.  Plaintiffs argue that federal legislation cannot "hinder or limit" the states' sovereign right to tax its citizens, but do not explain how a cap on a deduction available to individual taxpayers

interferes with the states' own taxing powers.  Opp. at 4–7.  Nothing about the Cap limits the states' abilities to pursue any particular tax policy.  *See Yellen*, 15 F.4th at 582–83 (finding unpersuasive the plaintiff-states' argument that the SALT Deduction Cap "unconstitutionally infringes on state sovereignty" by "coerc[ing] them to abandon their preferred fiscal policies").

Second, Plaintiffs assert that the Tenth Amendment "reserves to the States the taxing powers that existed prior to the adoption of the Constitution."  *See* SAC ¶ 75.  They contend that the "States had full rights to levy taxes under the Articles of Confederation that preceded our Constitution."  *Id.* ¶ 77; *see also* Opp. at 11.  Plaintiffs add that the states have a "sovereign[] right to have priority" and "primacy" with respect to taxes because the states' right to tax came first and predated the Constitution.  Opp. at 11.  The Constitution, however, "greatly changed" the allocation of taxing powers that existed under the Articles of Confederation.  *Lane Cnty. v. State of Oregon*, 74 U.S. 71, 77 (1868).  Whereas under the Articles the states maintained the "whole power of direct and indirect taxation of persons and property," the Constitution "gave the power to tax, both directly and indirectly, to the [federal] government."  *Id.* at 76–77.  Thus, the Tenth Amendment did not reserve to the states the taxing power existing prior to the Constitution, as the Constitution affirmatively allocated these powers to the federal government.  *Id.* at 77 (noting that the power to tax was given to the federal government, subject to only limited exceptions, "without any express reservation").

Third, Plaintiffs assert that "SALT revenues" were not taxed as part of the earliest income taxes and that Congress maintained the SALT Deduction from the passage of the first income tax under the Sixteenth Amendment in 1913 through 2017.  SAC ¶¶ 85–91; *see also* Opp. at 13.  But Congress has repeatedly altered the SALT Deduction since the passage of the Sixteenth Amendment, and this legislative history shows that Congress has not "view[ed] its authority to

7

limit the SALT deduction as subject to any relevant constitutional constraints." *Yellen*, 15 F.4th at 581–82. Moreover, Plaintiffs' citation to statements by various members of congress, *see* SAC ¶¶ 22–24, 26–27, does not undermine this point. *Yellen*, 15 F.4th at 581–82 (noting that such statements "have over time been drowned out by the overall statutory history of the deduction," which does not reflect that Congress believed that the deduction was required by the Constitution). Therefore, history does not show that the SALT Deduction is constitutionally compelled by principles of federalism.

Fourth, Plaintiffs argue that the SALT Deduction Cap is an unconstitutional use of Congress's taxing power to impose a regulatory penalty. Opp. at 8–10. Congress may not use its taxing power to "adopt[] the criteria of wrongdoing" and then impose a tax on those who do not comply. *See Bailey v. Drexel Furniture Co.*, 259 U.S. 29, 38 (1922) (striking down a "so-called tax" that was primarily meant to deter child labor). But the SALT Deduction is not a tax. *See Yellen*, 15 F.4th at 572 (describing the SALT Deduction as allowing "taxpayers *to deduct from their taxable income*" (emphasis added)). Moreover, income tax deductions are not available by right but instead are afforded to taxpayers only by the grace of Congress. *INDOPCO*, 503 U.S. at 84. Accordingly, the Cap cannot be a regulatory penalty.

Fifth, Plaintiffs allege that the SALT Deduction Cap was meant "to make States lower their taxes and the necessary public services they provide." SAC ¶ 65. This appears to implicate the anticommandeering doctrine, *see* Br. at 13–16, which instructs that "Congress may not simply commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472 (2018) (citation modified) (quoting *New York*, 505 U.S. at 161).

The SALT Deduction Cap does not violate this doctrine, as it does not directly compel the states to do anything. *See id*. at 475 (recognizing that in *Baker*, a law altering the tax treatment of state-issued bonds "did not order the States to enact or maintain any existing laws" and thus did not directly compel the states to act). Instead, "it simply ha[s] the indirect effect of pressuring States to" alter their tax policies. *Id.* For example, a state may opt to lower taxes so that their residents do not pay in excess of the SALT Deduction Cap, thereby incentivizing resident taxpayers to remain in the state. But nothing about the Cap compels any state to do anything at all. *See id.* at 474 (holding that a federal statute that prohibited states from authorizing sports gambling violated the anticommandeering doctrine because it "unequivocally dictate[d] what a state legislature may and may not do"). Accordingly, the SALT Deduction Cap does not violate the anticommandeering principle.

Sixth, Plaintiffs allege that the SALT Deduction Cap "is intended to interfere with many States' sovereign authority to determine their fiscal policies." SAC ¶¶ 92–93. Congress may use its taxing and spending powers to encourage the states to regulate in a particular way, including by using financial incentives to influence states' policy choices. *Yellen*, 15 F.4th at 582 (2d Cir. 2021) (citing *New York*, 505 U.S. at 166). Where this "pressure turns into compulsion," however, such action may infringe upon state sovereignty and violate principles of federalism by "indirectly coerc[ing] a State to adopt a federal regulatory system as its own." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 577–78 (2012) ("*NFIB*"). But the Supreme Court has only found such coercion once: *NFIB*. *Yellen*, 15 F.4th at 582. Under the Affordable Care Act, states that opted out of the expansion of health care coverage under Medicaid stood to lose both newly appropriated Medicaid funding as well as all of their existing federal Medicaid funding. *NFIB*, 567 U.S. at 581. The Court recognized that this amounted to a potential 10 percent loss of a state's budget, leaving

9

the state with "with no real option but to acquiesce in the Medicaid expansion." *Id*. at 581–82. The Court thus concluded that such a significant financial incentive was unconstitutionally coercive. *Id*.

Turning to Plaintiffs' claims here, they assert that "[e]xperts expect New Jersey and New York real estate to lose value as a result" of the SALT Deduction Cap. SAC ¶ 56. They add that several high-tax states did lose citizens to migration between the passage of the 2017 Tax Act and 2020 because citizens had an incentive to move to low-tax states. *Id*. ¶¶ 60–62, 65. But these assertions do not show that state tax revenues will decrease so significantly that the SALT Deduction Cap would "exert such undue pressure as to raise a genuine constitutional concern." *Yellen*, 15 F.4th at 583 (citing *NFIB*, 567 U.S. at 581). In fact, even in *Yellen*, where the court had allegations of specific estimated tax revenue losses for the plaintiff-states as a result of the Cap, the court found that the approximate "quantitative losses constitute[d] such a small portion of a State's budget" so as to not amount to federal coercion. *Id*. (citing *NFIB*, 567 U.S. at 581). Therefore, the SAC fails to show that the SALT Deduction Cap is unconstitutionally coercive. As all of Plaintiffs' arguments in defense of Counts One and Seven are unpersuasive, Defendants' motion to dismiss these claims is granted.

**B.      Privileges and Immunities Clause of Article IV (Count Two)**

In Count Two, Plaintiffs assert that the SALT Deduction Cap violates the Privileges and Immunities Clause of Article IV because it discriminates against citizens of high-tax states. SAC ¶¶ 97–102. This provision states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1.

The Privileges and Immunities Clause, however, is inapplicable to the challenged action. This Clause was intended "to foster a national union by discouraging discrimination against

10

residents of another state on the basis of citizenship." *Yerger v. Mass. Turnpike Auth.*, 395 F. App'x 878, 885 (3d Cir. 2010) (citation omitted); *see also Lutz v. City of York, Pa.*, 899 F.2d 255, 262 (3d Cir. 1990) ("[T]he purpose of the [Privileges and Immunities Clause] was simply 'to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy.'" (quoting *Toomer v. Witsell*, 334 U.S. 385, 395 (1948))). It therefore imposes a limit on state power, not federal power. *Pollack v. Duff*, 793 F.3d 34, 41 (D.C. Cir. 2015) (noting that the Supreme Court "has [n]ever held [that] an action taken by any branch of the federal government is subject to scrutiny under the Privileges and Immunities Clause of Article IV"); *see also Laws. for Fair Reciprocal Admission v. United States*, No. 22-2399, 2023 WL 145530, at *9 (D.N.J. Jan. 10, 2023) ("The federal government is simply not subject to scrutiny under the Privileges and Immunities Clause of Article IV."). Plaintiffs challenge a federal action, and therefore, the Privileges and Immunities Clause of Article IV does not apply.

Plaintiffs contend that the original intent of the Clause was actually to "protect against federal action." Opp. at 18–19, 25–27. The framers' intent, however, was to remedy "the practice of some States denying to outlanders the treatment that its citizens demanded for themselves." *Austin v. New Hampshire*, 420 U.S. 656, 660–61 (1975). Thus, contrary to Plaintiffs' argument, the intent of the Clause was to address discrimination by the states, not the federal government.

Plaintiffs additionally cite *Barron v. City of Baltimore*, 32 U.S. 243 (1833), to argue that the Clause was intended to restrain federal action. Opp. at 17–18. They contend that *Barron* stands for the proposition that constitutional clauses intended to limit state power specifically say so, and that the absence of "no state shall" from a clause indicates that it applies to the federal government. *Id.* at 17. *Barron*, however, merely held that the prohibitions in Article I, Section 10 expressly applied to the states because they affirmatively provided that "no state shall" take any

11

of the listed actions.  32 U.S. at 248–49.  The Court did not hold that all of the Constitution's

restrictions on state power categorically include the language "no state shall."  In fact, *Barron* also

explains that the location of a clause within the Constitution is relevant to whether it applies to the

state or federal governments.  *Id.* at 248 (noting that certain prohibitions on state power are

"brought together in the same section").  And the location of the Privileges and Immunities Clause

cuts against Plaintiffs' position:

> If the Privileges and Immunities Clause applied to the federal government, then we
> might expect to find it in Article I, § 9, alongside other limitations upon the powers
> of the Congress to discriminate against residents of certain states, such as the Export
> Taxation Clause and the Port Preference Clause; in any case, it would not be in
> Article IV

*Pollack*, 793 F.3d at 44.  Thus, *Barron* does not demonstrate that the Clause limits federal power.

Because the Privileges and Immunities Clause has no application to the challenged federal

action, the Court need not address Plaintiffs' other arguments as to why the action violated the

Clause.  Accordingly, Defendants' motion to dismiss Count Two is granted.

### C.    Ninth Amendment (Count Three)

In Count Three, Plaintiffs assert that the SALT Deduction Cap violates the Ninth

Amendment by disparaging the rights of citizens to be free from arbitrary or discriminatory taxes

on phantom income[3] and double taxation.[4]  SAC ¶¶ 103–113.  The Ninth Amendment provides

that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or

[3] "Phantom income" occurs when a "taxpayer receives taxable income but does not presently receive cash or other tangible economic benefits."  Timothy M. Todd, *Phantom Income and Domestic Support Obligations*, 67 Buff. L. Rev. 365, 376–77 (2019).  It requires someone to "pay taxes on something without receiving . . . any commensurate asset with which to pay those taxes."  *Id.* at 377.  For example, a partnership does not pay income taxes at the entity level.  *Id.*  Rather, the net income of the partnership is allocated to each partner, who then report their allocated income on their own tax returns and pay the taxes individually.  *Id.*  Although the partnership may have a positive net income, and thus the partners report receiving a positive net income for tax purposes, that does not necessarily mean that the partners actually received their allocated net income in cash through a distribution.  *Id.*  Instead, the partnership may have reinvested that income into the business.  *Id.* at 377–78.  In this situation, the partners are said to have received "phantom income," because while they must report on their individual taxes that they had positive net income, they did not actually receive the cash distribution on which to pay the corresponding income tax.  *Id.* at 378.

Plaintiffs assert that "state taxes deducted and withheld from their income" by New Jersey and "real estate taxes" paid to New Jersey constitute "phantom income" because the "Plaintiffs have never received the benefit of that income."  SAC ¶ 69; *see also id.* ¶ 129 ("The income withheld by operation of law by the State in which the taxpayer resides is income the taxpayer does not physically receive, *i.e.*, phantom income.").  Plaintiffs further argue that these taxes are phantom income because the "taxpayer did not keep or possess [the sums] paid to the state" or the sums were "never received [because they were] withheld."  Opp. at 2.  There are two flaws in Plaintiffs' argument.  First, that Plaintiffs did not keep the sums paid to the state in taxes says nothing about whether they received the corresponding assets on which they paid the taxes.  By Plaintiffs' definition, all state and local taxes would constitute phantom income just by virtue of an individual having to pay the taxes at all.  Second, that Plaintiffs had certain taxes withheld from paychecks by the state does not mean that they never received the benefit of that income.  Tax withholdings allow an individual to pay the commensurate portion of income tax with every paycheck, rather than paying all of one's income tax one time a year.  *See Tax Withholding for Individuals*, https://www.irs.gov/individuals/employees/tax-withholding (last visited Apr. 13, 2026).  But unlike true "phantom income," an individual whose taxes are withheld from a paycheck still receives the income that is subject to taxation.  Because Plaintiffs' argument misconstrues the nature of "phantom income," their assertion that the SALT Deduction Cap leads to a tax on phantom income lacks merit.

[4] Plaintiffs assert that "[d]ouble taxation exists when the taxpayer has paid taxes to the state where he resides and then pays federal taxes on the same money he has already paid the state."  Opp. at 15.  According to Plaintiffs, Congress not providing an unlimited SALT Deduction constitutes double taxation and is unconstitutional.  *Id.* at 27–28.  The cases Plaintiffs cite to support this position, however, involve challenges to state (not federal) taxes based on the interstate commerce clause.  *See Comptroller of the Treasury of Md. v. Wynne*, 575 U.S. 542 (2015); *Complete Auto Transit v. Brady*, 430 U.S. 274 (1977); *Cent. Greyhound Lines, Inc., of N.Y. v. Mealey*, 334 U.S.

disparage others retained by the people." U.S. Const. amend. IX. But this amendment "does not independently provide a source of individual constitutional rights." *Perry v. Lackawanna Cnty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (citations omitted). Rather than providing any substantive rights, courts interpret the Ninth Amendment as a rule of construction. *Soder v. Chenot*, No. 06-1522, 2007 WL 1098970, at *4 (M.D. Pa. Apr. 11, 2007) (citation omitted); *see also Cousar v. Morgan*, No. 21-14517, 2021 WL 5918474, at *5 (D.N.J. Dec. 15, 2021) ("The Ninth Amendment is not a source of rights as such; it is simply a rule about how to read the Constitution." (citation omitted)). Any claim arising under the Ninth Amendment accordingly fails as a matter of law. *Fennimore v. Lower Twp.*, No. 09-2090, 2011 WL 1705599, at *4 n.5 (D.N.J. May 4, 2011). Therefore, Defendants' motion to dismiss Count Three is granted.

### D.    Full Faith and Credit Clause of Article IV and the Preamble (Count Four)

In Count Four,[5] Plaintiffs assert that the SALT Deduction Cap violates the Full Faith and Credit Clause of Article IV and the Preamble to the U.S. Constitution. SAC ¶ 114–122. The Full

653 (1948); *Gwin, White & Prince v. Henneford*, 305 U.S. 434 (1939); *J.D. Adams Mfg. Co. v. Storen*, 304 U.S. 307 (1938); *Armco Inc. v. Hadesty*, 467 U.S. 638 (1984); *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159 (1983); *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232 (1987). These authorities do not support Plaintiffs' assertion that subjecting an individual to federal and state taxes on the same income constitutes "double taxation." Plaintiffs thus fail to provide any legal support for their double taxation argument.

[5] In addition to contending that Plaintiffs fail to state a claim here, Defendants argue that the Court lacks jurisdiction to consider Count Four as to Plaintiffs' 2018 tax refund claim (but not their 2019 claim) based on the "variance doctrine." Br. at 9–11. This doctrine bars a taxpayer from "raising in a refund suit grounds for recovery which have not previously been set forth in its [administrative] claim for a refund" before the Internal Revenue Service. *Shadoan v. United States*, No. 12-2538, 2021 WL 5235112, at *5 (S.D. Ind. Nov. 8, 2021) (citation omitted)). Thus, to the extent that Plaintiffs did not raise the constitutional provisions at issue in Count Four at the administrative level in their 2018 refund claim, the Court lacks jurisdiction to consider those arguments here. Nevertheless, because Defendants do not contend that the Court lacks jurisdiction as to the 2019 refund claim, the Court must still consider whether Plaintiffs state a claim in Count Four.

14

Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The Preamble to the U.S. Constitution states that the Constitution's purpose is to "form a more perfect union" and to "promote the general welfare."

The Full Faith and Credit Clause does not apply to federal action. Instead, it "require[s] the judgments of the courts of one State to be given the same faith and credit in another State as they have by law or usage in the courts of the State rendering them." *Morris v. Jones*, 329 U.S. 545, 547 (1947); *see also Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 245 ("The Court's Full Faith and Credit Clause precedents . . . demand that state-court judgments be accorded full effect in other States and preclude States from 'adopt[ing] any policy of hostility to the public Acts' of other States." (alteration in original) (citation omitted)); *Zahl v. Warhaftig*, 655 F. App'x 66, 77 (3d Cir. 2016) (noting that the Clause and implementing statute requires that federal courts "give 'full faith and credit' to the judgments of state courts"). Plaintiffs challenge a provision of a federal law and thus the Full Faith and Credit Clause does not apply.

Plaintiffs' reliance on the Preamble to the Constitution is similarly misplaced. The Preamble does not provide any substantive rights but rather "describes the goals and aspirations behind the text of the Constitution." *Tinsley v. Methodist Hosp. of Ind., Inc.*, 70 F.3d 1275, 1275 (7th Cir. 1995) (citing *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 22 (1905)). It thus cannot form the basis of any claim and Defendants' motion to dismiss Count Four is granted.

### E.    Intergovernmental Tax Immunity (Count Five)

In Count Five, Plaintiffs assert that the SALT Deduction Cap conflicts with the Reciprocal Immunity Doctrine, also known as Intergovernmental Tax Immunity. SAC ¶¶ 123–40. This doctrine provides that the "States can never tax the United States directly," whether the "levy falls

15

on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities." *Baker*, 485 U.S. at 523 (citations omitted). And the "rule with respect to state tax immunity [from direct federal taxes] is essentially the same," with some exceptions. *Id.*

Congress's altering of the SALT Deduction does not violate this doctrine. Even if the Cap was considered to be a tax, it merely changes the amount of income that may be collected by the federal government from individual taxpayers and thus is not a direct tax on the states themselves. *See id.* at 526–27 (holding that a federal law removing a tax exemption from state-issued bonds did not violate Intergovernmental Tax Immunity because the tax was "imposed on and collected from bondholders," and not from the states). The SALT Deduction Cap therefore does not violate Intergovernmental Tax Immunity and Defendants' motion to dismiss Count Five is granted.

### F.   Republican Guarantee Clause of Article IV (Count Six)

In Count Six,[6] Plaintiffs assert that the SALT Deduction Cap conflicts with the Republican Guarantee Clause. SAC ¶¶ 141–46. This provision, which states that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government," U.S. Const. art. IV, § 4, does not provide the basis for a justiciable claim. *See Rucho v. Common Cause*, 588 U.S. 684, 718 (2019) (noting that the Supreme Court has concluded "several times" that the Republican Guarantee Clause "does not provide the basis for a justiciable claim"). Accordingly, Defendants' motion to dismiss Count Six is granted.

### G.   Sixteenth Amendment Claims (Counts Eight and Nine)

---

[6] As with Count Four, *see supra* n.5, Defendants argue that the Court lacks jurisdiction to consider Count Six with respect to Plaintiffs' claims for a tax refund for 2018 (but not 2019) based on the "variance doctrine." Br. at 9–11. Again, because Defendants do not raise this argument as to the 2019 refund claim, the Court must still consider whether Plaintiffs state a claim in Count Six.

In Counts Eight and Nine, Plaintiffs assert that the SALT Deduction Cap violates the Sixteenth Amendment, which provides that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."  U.S. Const. amend. XVI.

### i.    The Sixteenth Amendment Does Not Require a SALT Deduction

Nothing in the text of the Sixteenth Amendment expressly requires a SALT deduction (or any deduction at all), nor does it limit Congress's authority to revoke or limit the SALT deduction once enacted.  *Yellen*, 15 F.4th at 580; *see also Alpenglow Botanicals*, 894 F.3d at 1202 ("Congress's choice to limit or deny deductions for [certain business] expenses . . . does not violate the Sixteenth Amendment.").  Nevertheless, Plaintiffs allege that the "meaning and intent" of the Sixteenth Amendment shows that the SALT Deduction Cap is unconstitutional.  SAC ¶ 165.  They add that the "States ratified the 16th Amendment with the representations and understanding that it would not expand the taxing power of the federal government" and that "State tax revenues could not be federally taxed."  *Id.* ¶¶ 163–64.

The Constitution originally provided that "[n]o . . . direct[] Tax shall be laid, unless in Proportion to the Census."  U.S. Const. art. I, § 9, cl. 4.  The Supreme Court had interpreted "direct" taxes to include income taxes.  *See Bowers v. Kerbaugh-Empire Co.*, 271 U.S. 170, 174 (1926) (citing *Pollock*, 158 U.S. at 618 (1895)).  The Sixteenth Amendment then eliminated the requirement that such "direct taxes" be subject to apportionment relative to the states' populations.  *Bowers v. Kerbaugh-Empire Co.*, 271 U.S. 170, 174 (1926) (citations omitted).  Indeed, "it was not the purpose or effect of that amendment to bring any new subject within the taxing power," as "Congress already had power to tax all incomes."  *Id*.  Thus, Plaintiffs' assertion that the states ratified the amendment with the understanding that it would not expand federal taxing power is to

17

no avail as no such expansion occurred.  Accordingly, the Sixteenth Amendment does not implicitly require the SALT Deduction.

ii.      *History Does Not Show that the SALT Deduction is Constitutionally Required*

In the Sixteenth Amendment Counts and elsewhere, Plaintiffs assert that the history surrounding the SALT Deduction shows that it is constitutionally required.  *See, e.g.*, SAC ¶ 157 ("In imposing an unprecedented $5,000 per person limitation on the deductibility of SALT revenue, Congress has exceeded its powers under the 16th Amendment."); *id.* ¶ 28 ("Congress has never before limited the amount of the exemption from federal taxation and the deduction of SALT revenues to a specific dollar cap of such taxes . . . .").  As an initial matter, "[l]egislative novelty is not necessarily fatal; there is a first time for everything." *NFIB*, 567 U.S. at 549.  In *Baker*, for example, the Supreme Court upheld a change to the tax code even where Congress had not altered the relevant provision since enacting the first federal income tax statute.  485 U.S. at 523, 527.

More important, however, and contrary to Plaintiffs' assertion, Congress has repeatedly altered the availability and scope of the SALT Deduction.  *Yellen*, 15 F.4th at 573 ("[A]mendments to the Tax Code have over time also made the deduction more difficult or less attractive for taxpayers to claim.").  For example, in 1964, Congress amended the SALT Deduction directly by providing that only certain specific state and local taxes were deductible.  *Id.* (citation omitted).  Congress made additional changes in 1986 by prohibiting certain high-income taxpayers from claiming the SALT Deduction and then again in 1990 by reducing the amount of the SALT Deduction available to taxpayers exceeding certain adjusted gross income thresholds.  *Id.* at 573–74 (citations omitted).   Thus, rather than supporting Plaintiffs' position, the history of the SALT

18

Deduction suggests that "Congress did not view its authority to limit the SALT deduction as subject to any relevant constitutional constraints."[7] *Yellen*, 15 F.4th at 581–82.

### iii. The SALT Deduction Cap Does Not Violate the Sixteenth Amendment or the Uniformity Clause By Having a Non-Uniform Effect on the States

Count Nine also asserts that the SALT Deduction Cap exceeds the scope of the Sixteenth Amendment because the Amendment "did not authorize unequal taxation of citizens based on the state of residence." SAC at 24. In addition to invoking the Sixteenth Amendment, this Count appears to also rely on the Uniformity Clause of Article I, which provides that taxes "shall be uniform throughout the United States."[8] U.S. Const. art. I, § 8, cl. 1.

Plaintiffs' argument that a tax with non-uniform effects on taxpayers from different states violates either constitutional provision lacks merit. All that the Constitution "requires is that the law shall be uniform in the sense that by its provisions the rule of liability shall be alike in all parts of the United States." *Florida v. Mellon*, 273 U.S. 12, 17 (1927). It does not require "Congress to devise a tax that falls equally or proportionately on each state." *United States v. Ptasynski*, 462 U.S. 74, 82 (1983). Rather, a "tax is uniform when it operates with the same force and effect in

---

[7] Beyond the legislative history, Courts have also upheld constitutional challenges to changes to the SALT Deduction, including on Sixteenth Amendment grounds. *See Campbell v. United States*, No. 00-4746, 2001 WL 1262934, at *3–4 (S.D.N.Y. Oct. 22, 2001) (finding that the 1980 amendment did not violate Article I, Section 8, the Tenth Amendment, or the Sixteenth Amendments), *aff'd*, 45 F. App'x 50 (2d Cir. 2002); *Okin v. C.I.R.*, 808 F.2d 1338, 1342 (9th Cir. 1987) (rejecting a due process challenge to the 1986 amendment to the SALT Deduction and collecting cases that did the same).

[8] Although Plaintiffs state that a claim under the Uniformity Clause "is not pled separately as a cause of action herein," Opp. at 47, they cite to case law concerning this Clause and invoke this Clause to support their argument that the SALT Deduction Cap "creates uniformity problems." *Id.* at 49; *see also id.* at 51 ("Many clauses of the fabric of the Constitution are designed to ensure that federal taxes . . . are applied equal to all states and their citizens." (citing U.S. Const. art. I, § 8, cl. 1)). Accordingly, the Court will address this argument by reference to both the Sixteenth Amendment and the Uniformity Clause.

19

every place where the subject of it is found." *Id.* (quoting *Head Money Cases*, 112 U.S. 580, 594 (1884)).  The SALT Deduction Cap meets this requirement, as a citizen of any state may claim the deduction subject to the same Cap. *See Campbell*, 2001 WL 1262934, at *4 (finding that an earlier amendment to the SALT Deduction applied equally to citizens of all states "as it limit[ed] itemized deductions that all taxpayers above a specific adjusted gross income can take").  And the "outsized effect of the SALT deduction cap on the [Plaintiffs] arises only because [they] previously benefitted most from the SALT deduction, not because the cap applies to some States but not others." *Yellen*, 15 F.4th at 584.  Thus, the SALT Deduction Cap does not unconstitutionally treat taxpayers of the various states differently.

Finally, Plaintiffs' reliance on statements by certain members of Congress and the Executive branch suggesting that the SALT Deduction Cap was enacted to intentionally punish certain states does not save their claim.  *See, e.g.*, SAC ¶¶ 45–53.  Courts "generally presume that government officials act in good faith." *Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021).  And "'cherry-picked' statements" from individual legislators "cannot be deemed to reflect the views of other legislators, much less of a majority of those who enacted the statute." *OFC Comm Baseball v. Markell*, 579 F.3d 293, 302 n.5 (3d Cir. 2009) (citation omitted).  In any event, a handful of quotes do not change the fact that the SALT Deduction Cap complies with the Supreme Court's requirements for tax uniformity.  Therefore, Defendants' motion to dismiss Counts Eight and Nine is granted.

### H.    Declaratory Relief/Tax Refund (Count Ten)

In Count Ten, Plaintiffs request a judgment declaring the SALT Deduction Cap unconstitutional.  SAC ¶¶ 167–70.  As no substantive claims remain in this action, the declaratory

judgment claim will be dismissed. *See Bonilla v. City of Allentown*, 359 F. Supp. 3d 281, 305 (E.D. Pa. 2019), *as amended* (Apr. 19, 2019).

## IV.   CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 28th day of May, 2026;

**ORDERED** that Defendants' motion to dismiss (ECF No. 33) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' SAC (ECF No. 24) is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiffs shall have thirty (30) days from entry of this Opinion and Order to submit a further amended complaint that addresses the deficiencies identified in this Opinion and Order.  Insofar as Plaintiffs submit a further amended complaint, they shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

**ORDERED** that Plaintiffs' cross motion for summary judgment (ECF No. 42) is **DENIED AS MOOT**; and it is further

**ORDERED** that the Clerk's Office is directed to mark this case as **CLOSED**.

**SO ORDERED.**

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

21